## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DECEE KARNGBAYE,

　　　　　　　　*Petitioner,*

　　v.

LAUREL HARRY, et al.,

　　　　　　　　*Respondents.*

CIVIL ACTION
NO. 21-5667

**Pappert, J.**　　　　　　　　　　　　　　　　　　　　**March 15, 2024**

## <u>MEMORANDUM</u>

Decee Karngbaye was convicted in state court in 2016 on three counts of robbery, two counts of theft by extortion and one count of criminal conspiracy and was sentenced to 7½ to 15 years incarceration.  He filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The Court referred the petition to Magistrate Judge Strawbridge, who issued a Report and Recommendation recommending its dismissal.  Karngbaye objected to the R&R in its entirety.  After thoroughly reviewing the record, *see* (ECF Nos. 10-1, 18), the Court overrules the objections and adopts the R&R.

I

A

The events that led to Karngbaye's arrest were comprehensively summarized by the Superior Court during direct appeal proceedings:

> Appellant played the role of bodyguard to his co-conspirator, Cole Williams (Williams), in a scam that resulted in payment of more than $16,000 to Appellant and Williams by their victim, Addisu Eggu (Eggu).

1

Appellant and Williams first visited Eggu on April 30, 2015, in the restaurant Eggu established and operated in Lancaster after emigrating to the United States from Ethiopia. In that initial visit, Williams claimed he was the Abdullah, the son of the President of Liberia, and had five million dollars he wanted to invest in Eggu's restaurant. Because Eggu was busy with other customers, he gave Appellant and Williams his business card.

On the following Monday, May 4, 2015, Williams called Eggu to say he and his bodyguard (Appellant) would be visiting Eggu to discuss investing. The two men arrived at the restaurant the following day, with Williams carrying a black backpack he claimed contained $50,000 in cash, illustrating how serious he was about investing. Williams ordered Eggu to lock the door to the restaurant causing Eggu to protest about the loss of customers. At that point, Appellant's shirt moved or was lifted up revealing what Eggu described as the handle of a black gun in Appellant's waistband.

Eggu told the men he did not need any money. Appellant then asked if there were video cameras on site. When Eggu acknowledged there were cameras, Appellant directed Eggu to go to a back room (his office) to talk with Williams. According to Eggu, Williams then showed him photographs of beheaded Ethiopians and told Eggu that would happen to him and to his family if he did not give Williams $20,000. Eggu and Williams then returned to the dining room of the restaurant.

Before Appellant and Williams left the restaurant that day, Eggu gave them the $200 he had on his person. He then pulled together $1,000 and called the men at the number they had given him. They set up a meeting at [a] local hotel where Eggu gave them $1,000. Angered it was not the $20,000 demanded, Appellant threw the money in Eggu's face, took Eggu into the bathroom where he placed his hand over Eggu's nose and mouth, and commented to the effect that Eggu "not do nothing." When Eggu claimed he could get more money, they let him go, but kept the $1,000.

Eggu borrowed $3,000 from a friend, took out an $8,000 line of credit from his bank, and withdrew $4,000 from his checking account. After reporting to Appellant that he was able to come up with only $15,000, Appellant assured Eggu that they would be able to multiply that amount many times over. Although Eggu did not believe Appellant about the money, he was terrified of the men and acted out of fear.

Appellant and Williams returned to the restaurant on May 8 and instructed Eggu to turn off the video cameras and the lights. They brought with them a black bag filled with white paper cut to the size of U.S. currency. Essentially, they put a brown chemical in the bag and instructed Eggu to put the bag in the refrigerator and not touch it. They

left with Eggu's $15,000 and said they would be back to collect the black bag.

Later that night, Eggu began receiving calls from people claiming to be from Syria who threatened Eggu and told him not to touch the black bag. Frightened for his safety and the safety of his family, Eggu drove back and forth multiple times between his home and the restaurant, to check on his family and to see if the men had returned to the restaurant. He eventually woke his wife and told her what happened. She convinced him to contact the police. A friend escorted him to the police station the next day where he spoke with an intake officer to whom he gave the black trash bag. Police testing of the bag confirmed Appellant's fingerprint. Cell phone forensics revealed that the cell phone Eggu called pinged at towers aligning with Eggu's version of events and primarily pinged at an address close to Appellant's New Jersey residence. Police determined Appellant's identity and took him into custody on September 18, 2015.

(ECF No. 10-1, at 97–100).

B

Karngbaye was tried in Lancaster County.[1]  He did not testify and was convicted and sentenced.  He did not directly appeal his conviction.  On June 2, 2017, he filed a *pro se* petition for relief under the Post Conviction Relief Act, asserting ineffective assistance of counsel claims, also asking the court to restore his direct appeal rights. (*Id.* at 4–29).  Without assessing the ineffective assistance claims, the PCRA court reinstated his direct appeal rights.  Karngbaye exercised those rights by filing a notice of appeal and Statement of Matters Complained of on Appeal with the trial court, which filed a Rule 1925 opinion.  (*Id.* at 23–33).  Karngbaye appealed to the Superior Court, raising four issues: a deadly weapon enhancement applied to two of the robbery counts; the sufficiency of the evidence for his conviction of robbery by threat of immediate serious bodily injury in two of the encounters with Eggu; the separate sentences

---

[1]     His purported co-conspirator, Williams, was not tried with him.

imposed for the theft by extortion crimes; and the grading of one of the theft by extortion counts.  Though the Superior Court agreed with Karngbaye on the latter two issues, they did not change the overall sentencing scheme and the court upheld his conviction.  (*Id.* at 36–109).  The Pennsylvania Supreme Court denied Karngbaye's request for appeal.  (*Id.* at 167).

C

On July 18, 2019, Karngbaye filed another PCRA petition alleging ineffective assistance of counsel claims.  (*Id.* at 167–81).  He was appointed counsel, who filed an amended petition asserting that trial counsel was ineffective for (1) failing to prepare Karngbaye to testify and (2) failing to assess whether the victim, Eggu, was competent to testify without an interpreter.  (*Id.* at 186–92).  On September 10, 2020, the PCRA court gave notice of its intent to dismiss the PCRA petition without a hearing, and it did so on October 14, 2020.  (*Id.* at 194–209).  Karngbaye appealed and the PCRA court filed its opinion on January 5, 2021.  (*Id.* at 215–22).  In the Superior Court, postconviction counsel chose to argue only the claim that trial counsel was ineffective for failing to prepare Karngbaye to testify.  (*Id.* at 213, 225).  The Superior Court affirmed the PCRA court's dismissal without a hearing, and Karngbaye did not seek review in the Pennsylvania Supreme Court.  (*Id.* at 244–53).

D

On December 21, 2021, Karngbaye filed this petition, asserting six claims, all grounded in trial counsel's alleged ineffective assistance of counsel: (1) Karngbaye's decision not to testify was involuntary, caused by counsel's threat to withdraw if

4

Karngbaye asserted his right to do so; (2) counsel failed to present character witnesses; (3) counsel failed to provide effective assistance during pre-trial, trial and direct appeal proceedings; (4) counsel allowed Eggu to testify without an interpreter, enabling the Commonwealth to improperly lead the witness; (5) counsel was ineffective by failing to effectively impeach and cross-examine Commonwealth witnesses; and (6) counsel's cumulative errors resulted in prejudice.  (Mem. In Supp. Pet. For Writ of Habeas Corpus, ECF No. 1-1, at 2).

On May 30, 2023, Judge Strawbridge recommended denial and dismissal of Karngbaye's petition in its entirety.  (ECF No. 16).  Specifically, the R&R found that all but one "thread" of Karngbaye's allegations were procedurally defaulted, and the available state court records indicated Karngbaye's claims lacked merit.  As to the claim that was fully exhausted, Judge Strawbridge found the state court resolved the issue reasonably.  On July 3, 2023, Karngbaye objected to all of Judge Strawbridge's conclusions, contending, *inter alia*, that the United States Supreme Court's decision in *Shinn v. Ramirez*, 596 U.S. 366 (2022), which held that the habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state court record based on the ineffectiveness of state postconviction counsel, should not apply and that the R&R did not consider the full state court record.[2]  (Objections to R&R, ECF No. 17).

---

[2]     Judge Strawbridge never received the full record from the Lancaster County Court of Common Pleas.  However, he concluded that the documents appended by the parties "included virtually all of the materials that we would have received had we received the original record from the Court of Common Pleas."  (R&R, ECF No. 16, at 2 n.1).  While he never received the notes of testimony or trial exhibits, he determined the parties' "undisputed descriptions of the trial events and evidence provided sufficient information."  (*Id.*)  The Court has since received and reviewed "the whole and entire record," *see* (ECF No. 18, at 6), and agrees with Judge Strawbridge's assessment.

II

The Court reviews *de novo* the specific portions of the R&R to which a party objects.  28 U.S.C. § 636(b)(1); *see also Cont'l Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 250 (3d Cir. 1998).[3]  The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).

A

Before a federal court can grant a petition for a writ of habeas corpus, the petitioner must exhaust the remedies available in state court.  *Lambert v. United States*, 134 F.3d 506, 513 (3d Cir. 1997) (citing 28 U.S.C. § 2254(b)(1)(A)).  To satisfy this exhaustion requirement, a federal habeas petitioner must demonstrate that the claims at issue have been "fairly presented to the state courts."  *Castille v. Peoples*, 489 U.S. 346, 351 (1989).  This requirement is satisfied by "invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Where a claim is not properly presented to the state courts, the petitioner has procedurally defaulted that claim.  *Coleman v. Thompson*, 501 U.S. 722, 749 (1991). Such a claim cannot provide a basis for federal habeas relief unless the petitioner can show "cause for the default and actual prejudice as a result of the alleged violation of federal law, or [unless he] demonstrates that failure to consider the claims will result in

---

[3]      "[F]or the portion of the R&R to which no objection [is] made, the Court reviews the R&R for clear error."  *Harris v. Mahally*, No. 14-2879, 2016 WL 4440337, at *4 (E.D. Pa. Aug. 22, 2016). Because the Court liberally construes Karngbaye's objections and applies them to the R&R in its entirety, the Court reviews all of the R&R's findings and recommendations *de novo*.

a fundamental miscarriage of justice." *See Wainwright v. Sykes*, 433 U.S. 72 (1976); *Coleman*, 501 U.S. at 750. The "fundamental miscarriage of justice" exception ordinarily requires a showing of "actual innocence." *See Leyva v. Williams*, 504 F.3d 357, 366 (3d Cir. 2007).

In *Martinez v. Ryan*, the Supreme Court held that postconviction counsel's failure to raise an ineffective assistance of counsel claim on collateral review may constitute "cause" to excuse procedural default of a claim that trial counsel was ineffective if: (1) the underlying ineffective assistance of trial counsel claim is "substantial," and (2) the procedural default of that substantial claim was the result of state postconviction counsel's ineffectiveness. 566 U.S. 1, 14 (2012); *Workman v. Superintendent Albion SCI*, 915 F.3d 928, 937 (3d Cir. 2019). "[S]ubstantial" means that the claim has "some merit," meaning that "reasonable jurists could debate whether (or, for that matter agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Id.* at 937–38 (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)).

Before *Shinn v. Ramirez*, 596 U.S. 366 (2022), courts in this circuit could hold a hearing on whether the petitioner could overcome the default of a claim, and if the petitioner successfully showed that he could do so, the court could then consider the evidence introduced at the hearing in its *de novo* review on the merits of the underlying habeas claim. *See Rush v. Attorney General of Pennsylvania*, No. 20-1256, 2023 WL 5756507, at *16–17 (W.D. Pa. Aug. 15, 2023) (citing *Cristin v. Brennan*, 281 F.3d 404, 413 (3d Cir. 2002)). After *Shinn*, however, courts may not follow that procedure. If a

federal habeas court holds a hearing on whether a petitioner can overcome the default of a claim, it may not consider evidence introduced at that hearing in evaluating the merits of the underlying habeas claim unless the petitioner satisfies one of 28 U.S.C. § 2254(e)(2)'s two exceptions to the general bar on evidentiary hearings. *Shinn*, 596 U.S. at 382–89 ("[W]hen a federal habeas court convenes an evidentiary hearing for any purpose, or otherwise admits or reviews new evidence for any purpose, it may not consider that evidence on the merits of a negligent prisoner's defaulted claim unless the exceptions in § 2254(e)(2) are satisfied.").

In other words, courts cannot hold an evidentiary hearing to develop evidence supporting the merits of a petitioner's claims unless they are based on (1) a "new" and "previously unavailable" rule of constitutional law made retroactively applicable, or (2) "a factual predicate that could not have been previously discovered through the exercise of due diligence." *Id.* at 381–82 (citing 28 U.S.C. §§ 2254(e)(2)(A)(i), (ii)) (adding that "state postconviction counsel's ineffective assistance in developing the state-court record" is "attributed to the prisoner"). "If a prisoner can satisfy either of these exceptions, he also must show that further factfinding would demonstrate, 'by clear and convincing evidence,' that 'no reasonable factfinder' would have convicted him of the crime charged." *Id.* at 381 (quoting 28 U.S.C. § 2254(e)(2)(B)).

In *Williams v. Superintendent Mahanoy SCI*, 45 F.4th 713 (3d Cir. 2022), the Third Circuit instructed that before holding a hearing on whether a petitioner can overcome a default of a claim, a federal habeas court must first decide whether the underlying defaulted habeas claim "succeeds considering only the state court record." *Id.* at 724. If the court concludes that the underlying claim is not supported by the

8

state court record, it "should deny relief without more." *Id.* at 723–24 (adding that courts "need not dwell" on the issue of whether the petitioner can overcome his default if the petitioner cannot show that his trial counsel was ineffective when considering only the facts developed in the state court).

B

Claims resolved on the merits by the state court are reviewed under the deferential standard established by the Antiterrorism and Effective Death Penalty Act of 1996, which provides that habeas relief is precluded unless the state court's adjudication of a claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). A state court's adjudication of a claim is contrary to Supreme Court precedent if the state court applied a rule that contradicts Supreme Court precedent or if the state court confronts a set of facts which are materially indistinguishable from a Supreme Court decision and the state court arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). A state court ruling "is considered an unreasonable application if the state court unreasonably applies the correct legal rule to the particular facts, unreasonably extends a legal principle to a new context, or unreasonably refuses to extend the principle to a new context where it should apply." *McMullen v. Tennis*, 562 F.3d 231, 236 (3d Cir. 2009).

C

The two-part test from *Strickland v. Washington* governs ineffective assistance of counsel claims.  466 U.S. 668, 669 (1984).  To succeed, Karngbaye must show (1) "counsel's performance was deficient, in that it fell below an objective standard of reasonableness," and (2) he "suffered prejudice as a result of the deficiency."  *Blystone v. Horn*, 664 F.3d 397, 418 (3d Cir. 2011) (citing *Strickland*, 466 U.S. at 687).  His claim cannot proceed if he fails to demonstrate either prong.  *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one . . . .").  "[B]oth the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact."  *Id*. at 698.

With respect to counsel's performance, there is a "strong presumption" it was not deficient.  *Jermyn v. Horn*, 266 F.3d 257, 282 (3d Cir. 2001).  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  *Strickland*, 466 U.S. at 690.  Where "the record does not explicitly disclose trial counsel's actual strategy or lack thereof (either due to lack of diligence on the part of the petitioner or due to the unavailability of counsel), the presumption may only be rebutted through a showing that no sound strategy . . . could have supported the conduct."  *Thomas v. Varner*, 428 F.3d 491, 500 (3d Cir. 2005).

To establish prejudice, Karngbaye must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  "The likelihood of

10

a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). The Court must consider the totality of the evidence. *Strickland*, 466 U.S. at 695. Counsel cannot be found to be ineffective for failing to pursue a meritless claim. *See United States v. Bui*, 795 F.3d 363, 366–67 (3d Cir. 2015) ("[T]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.") (quoting *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999)).

### III

First, Judge Strawbridge noted "one thread of allegations" that was presented on PCRA review and underwent a complete round of appellate review: Karngbaye's claim that counsel performed deficiently in failing to prepare him for the possibility of testifying at trial.[4]  (R&R, ECF No. 16, at 11). Because this claim underwent a full round of review in state court, *see* (ECF No. 10-1, at 246–53), it receives a deferential review under 28 U.S.C. § 2254(d).

The state court reasonably rejected Karngbaye's claim that his lawyer inadequately prepared him to testify at trial. The Superior Court was guided by the principle that "the decision of whether to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel."  (ECF No. 10-1, at 248–49) (quoting *Commonwealth v. Sandusky*, 203 A.3d 1033, 1075 (Pa. Super. Ct. 2019)).  And key to the court's decision was its reliance on Karngbaye's representations to the trial

---

[4]     Karngbaye does not explicitly assert this claim in his habeas petition.  However, the Court, like Judge Strawbridge, liberally construes Karngbaye's petition and will analyze the issue.

court, under oath, admitting he discussed with counsel his right to testify and made his

own informed decision not to do so:

| | |
|---|---|
| The Court: | Mr. Karngbaye. |
| The Defendant: | Yes, sir. |
| The Court: | It's been told me [sic] from your attorney that you do not intend to testify tomorrow |
| The Defendant: | Yes. |
| The Court: | —at trial is that right? |
| The Defendant: | Yes, sir. |
| The Court: | Now, you understand you have an absolute right, constitutional right to testify if you so choose? |
| The Defendant: | Yes, sir. |
| The Court: | If you do testify, you understand that the Commonwealth would be entitled to cross-examine you and there are certain types of crimes—and I have no idea of your record, but there are certain types of crimes that could be introduced to impeach or challenge you.  Do you understand that? |
| The Defendant: | Yes, sir. |
| The Court: | Do you also understand that if you decide not to testify I will tell the jury that you have an absolute right, constitutional right, to silence just as I have already many times.  And if you choose to exercise that right, that they may not consider your silence in any way contrary to your interest. |
| | Do you understand that? |
| The Defendant: | Yes, sir. |
| The Court: | Have you had the opportunity to discuss this issue fully with your attorney? |
| The Defendant: | Yes, sir. |
| The Court: | And is it still your desire or your decision not to testify tomorrow? |
| The Defendant: | Yes, sir. |

| | |
|---|---|
| The Court: | All right Very good [sic].  If you have any further questions of your attorney, make sure you ask it; and if there's any change, I'm to be informed rather than ask Mr. Karngbaye or counsel.  All right [sic] |
| The Defendant: | Yes, sir. |

(ECF No. 10-1, at 215–22).  The Superior Court further noted that Karngbaye had not alleged in his petition "what advice, if any, counsel gave concerning his decision whether to testify, or that he ever communicated to counsel that he wished to take the stand to offer his version of events," and thus failed "to plead facts concerning advice counsel gave him" such that "counsel's bad advice vitiated the voluntariness of his decision not to testify . . . ." (ECF 10-1, at 251–52).

IV

In his remaining claims, Karngbaye contends that trial counsel was ineffective for various reasons: (1) threatening to withdraw his representation if Karngbaye testified; (2) failing to present character evidence; (3) failing to provide effective assistance during pre-trial, trial and direct appeal proceedings; (4) allowing Eggu to testify without an interpreter, permitting the Commonwealth to ask leading questions; (5) failing to effectively impeach and cross-examine Commonwealth witnesses; and (6) prejudicing Karngbaye with these cumulative errors.  (Mem. In Supp. Pet. For Writ of Habeas Corpus, ECF No. 1-1, at 2).  None of these claims underwent a full PCRA review, only one was even presented during the PCRA proceedings, *see* (ECF No. 10-1, at 196–209), and Karngbaye cannot return to state court and litigate them given they are barred by state waiver rules and the PCRA's one-year statute of limitations.  *See* 42 Pa. Cons. Stat. Ann. § 9545(b)(1).

13

A

Karngbaye argues that the *Martinez* exception excuses his procedural default. (Mem. In Supp. For Writ of Habeas Corpus, ECF No. 1-1, at 11).  To the extent he seeks an evidentiary hearing to develop support that his claims are "substantial," *see* (Request For Evidentiary Hearing, ECF No. 2, at 2); (Objections to R&R, ECF No. 17, at 8),[5] the Court "need not dwell on this issue." *Williams*, 45 F.4th at 720.  Because none of Karngbaye's claims are based on (1) a "new" and "previously unavailable" rule of constitutional law made retroactively applicable, or (2) "a factual predicate that could not have been previously discovered through the exercise of due diligence," the Court is confined to the state court record in evaluating the merits of his claims.  *Shinn*, 596 U.S. at 381–82 (citing 28 U.S.C. §§ 2254(e)(2)(A)(i), (ii)).  Therefore, if the underlying ineffectiveness claim is not supported by the state court record, the court "should deny relief without more." *Williams*, 45 F.4th at 724.

1

Trial counsel's alleged threat to quit the case if Karngbaye testified could rise to the level of ineffective assistance of counsel. *See, e.g., Nichols v. Butler*, 953 F.2d 1550, 1552 (11th Cir. 1992).  But there is nothing in the record to indicate counsel made such threats.  To the contrary, Karngbaye told the trial court under oath that he spoke with his lawyer about his right to testify and that it was Karngbaye's decision not to do so. (ECF No. 10-1, at 216–17).  On that record, Karngbaye "cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable

---

[5]      At other points in his objections, Karngbaye says a hearing would not be necessary.

professional assistance.'"[6] *Burt v. Titlow*, 571 U.S. 12, 23 (2013)) (quoting *Strickland*, 466 U.S. at 689).

2

Next, Karngbaye contends that trial counsel was deficient when he failed to present character evidence, specifically, his reputation for peacefulness, that would have supported his defense that he engaged only in an investment scheme absent any violence or weapons. (Mem. In Supp. For Writ of Habeas Corpus, ECF No. 1-1, at 22). Karngbaye claims he had family members and friends who were willing to testify on his behalf, which in conjunction with his own testimony, "could have been enough to result in a not guilty verdict on all charges." (*Id.*)

Attorneys are not required to call every witness suggested by their clients. *Reed v. Gavin*, No. 13-4257, 2014 WL 645232, at *5 (E.D. Pa. Feb. 18, 2014). That decision "is precisely the type of strategic decision which the Court in *Strickland* held to be protected from second guessing."[7] *United States v. Merlino*, 2 F. Supp.2d 647, 662 (E.D. Pa. 1997). Mere criticism of the trial lawyer's choice or strategy is not enough to

---

[6]     To the extent Karngbaye claims there are purportedly "four affidavits" supporting his contention that counsel threatened to withdraw if he chose to testify, (Objections to R&R, ECF No. 17, at 9), they were not in the state court record the Court received. *See* (ECF Nos. 10-1, 18). Moreover, in his sworn colloquy with the trial court, Karngbaye waived his right to testify, and "[a] court is not required to determine a defendant's waiver with absolute certainty." *United States v. Robles*, 814 F. Supp. 1233, 1244 (E.D. Pa. 1993). "If the defendant wishes to testify, it is his burden to make that clear to the court." *Id. See also Brooks v. Zimmerman*, 712 F. Supp. 496, 503 (W.D. Pa. 1989) (adding the "accused must act affirmatively in these circumstances").

[7]     Relatedly, Karngbaye mentions that trial counsel should have called Officer Gracyzk and Eggu's wife as witnesses. (Request For Evidentiary Hearing, ECF No. 2, at 15–17). These witnesses could have damaged Karngbaye's defense by supporting and corroborating Eggu's story, and thus Karngbaye has failed to overcome the strong presumption that counsel chose not to call these witnesses as a matter of sound trial strategy.

support an ineffective assistance claim. *Id.* While Karngbaye is upset trial counsel "didn't call character witnesses for a client with no prior record," (Objections to R&R, ECF No. 17, at 10), he "ignores the risks that can come from even calling such a witness." (R&R, ECF No. 16, at 21). "Where the defendant chooses this perilous path . . . he opens the door for the prosecution to . . . challenge the defendant's character witnesses by cross-examining them about their knowledge of relevant specific instances of the defendant's conduct." *United States v. Monteleone*, 77 F.3d 1086, 1089 (8th Cir. 1996). "The rationale for such cross-examination is that if the character witness knew about the prior bad conduct, his good opinion might rightfully be questioned and if he did not know about the conduct, the jury might question the reliability of his opinion and his assessment of the defendant's reputation." *United States v. Lundy*, 416 F. Supp.2d 325, 336 (E.D. Pa. Dec. 2, 2005). Karngbaye's criticism of trial counsel's strategy, without more, is insufficient to carry his claim.

To the extent Karngbaye contends counsel failed to conduct any pre-trial interviews, again, nothing supports this claim. And without any evidence to the contrary, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. *See also Dubrock v. Superintendent of SCI Somerset*, No. 21-432, 2022 WL 20466095, at *12 (W.D. Pa. Nov. 18, 2022) (rejecting *Martinez* claim because "[t]here is no testimony from trial counsel in the state court record or any other evidence from which the undersigned can conclude that trial counsel was ineffective").

16

3

Karngbaye broadly asserts that counsel was ineffective in "critical aspects of pre-trial, trial and direct appeal proceedings" and contends the "Notes of Testimony would show that counsel performed deficiently."  (Objections to R&R, ECF No. 17, at 11). They do not.

i

Karngbaye first claims he only met with trial counsel three times and said those meetings were generally brief.[8]  He says trial counsel was unprepared, "had only a basic understanding" of how the "black money" scheme worked and did not request a continuance.  (Mem. In Supp. Pet. For Writ of Habeas Corpus, ECF No. 1-1, at 23). Judge Strawbridge called these claims "blanket assertions" and noted that Karngbaye never specifically described *how* counsel's alleged inadequate preparation prejudiced him at trial.  *See Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir. 1991) (noting vague and conclusory allegations do not meet a habeas petitioner's burden to show a constitutional violation; a petitioner "must set forth facts to support his contention"). In contrast to Karngbaye's claims, the record indicates he was prepared for trial: he cross-examined Detective Weiser about the fingerprints on the bag, Detective Owens about the cell phone tracking data and Detective Drouillard about the discrepancies in Eggu's accounts to the police—all lines of questioning that required familiarity with the case.  (N.T.T. 208–211, 234:14–244:14, 313:19–314:9).[9]  In short, the record does not

---

[8]       Even if counsel met with Karngbaye "only" three times, that does not mean that counsel was unprepared to try the case, particularly if his client was not going to testify.

[9]       "N.T.T." is referring to the Notes of Trial Testimony.

show that trial counsel was so unprepared, and his errors so serious, that he was no longer functioning as counsel. *Strickland*, 466 U.S. at 687.

ii

Karngbaye further contends that trial counsel was unprepared and lost credibility when he unsuccessfully cross-examined Eggu about locking the door to his restaurant. (Objections to R&R, ECF No. 17, at 10–11). *Strickland's* presumption of correctness "operates with particular force when the conduct at issue relates to counsel's conduct of cross-examination." *Love v. McCray*, 165 F. App'x 48, 49 (2d Cir. 2006); *Fabian v. United States*, No. 04-1896, 2007 WL 2480164, at *9 (E.D.N.Y. Aug. 28, 2007) ("Ineffective assistance of counsel claims based on inadequate cross-examination are strongly disfavored."); *Cruz v. Griffin*, No. 16-8998, 2019 WL 6220806 (S.D.N.Y. Oct. 24, 2019) ("Petitioner cannot prevail on a claim of ineffective assistance merely because he believes that his counsel's strategy was inadequate or because the cross-examinations were arguably ineffective."). Karngbaye "cannot now state a claim of ineffective assistance simply because a trial strategy ended up being unsuccessful," *United States v. Bado*, 2021 WL 2456657, at *9 (E.D. Pa. June 16, 2021), and there is no evidence counsel lacked a strategic reason for his questioning.

Even if counsel's performance was deficient, Karngbaye failed to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 692. Karngbaye has not demonstrated that counsel's questioning about locking the door reasonably changed the outcome of his trial, especially given the rest of Eggu's testimony and the evidence that supported Eggu's story. For instance, the "cell phone forensics revealed that the cell

18

phone Eggu called pinged at towers aligning with Eggu's version of events and primarily pinged at an address close to [Karngbaye's] New Jersey residence."  (ECF No. 10-1, at 97).  As such, "[n]othing in the evidence presented shows that counsel's errors in his cross-examination of [the witness] were so serious, in light of all the evidence . . . to deprive the defendant of a trial whose result is reliable."  *United States v. Travillion*, 759 F.3d 281, 293 (3d Cir. 2014).

iii

Karngbaye contends counsel was deficient for not procuring an expert witness to explain the "black money" scheme—a scheme where Karngbaye and a co-conspirator brought a black bag filled with paper cut to the size of money, and then put a chemical in the bag and told Eggu to put it in the refrigerator and not to touch it.  (ECF 10-1, at 97).  "[S]trategic decisions—including whether to hire an expert—are entitled to a 'strong presumption' of reasonableness."  *Dunn v. Reeves*, 594 U.S. 731, 739 (2021) (quoting *Harrington*, 562 U.S. at 104); *Lou v. Mantello*, No. 98-5542, 2001 WL 1152817 at *10 (E.D.N.Y. Sept. 25, 2001) ("Habeas claims based on 'complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified [to] are largely speculative.'") (citations omitted).  "Such decisions are particularly difficult because certain tactics carry the risk of 'harm[ing] the defense' by undermining credibility with the jury or distracting from important issues."  *Dunn*, 594 U.S. at 739 (quoting *Harrington*, 562 U.S. at 108).  Furthermore, "[e]xpert evidence is generally required when an issue is beyond the ken of a lay jury."  *McMunn v. Babcock & Wilcox Power Generation Grp., Inc.*, 869 F.3d 246, 267 (3d Cir. 2017).

19

The burden of rebutting this presumption "rests squarely on the defendant," and "[i]t should go without saying that the absence of evidence cannot overcome [it]." *Titlow*, 571 U.S. at 22–23. "[E]ven if there is reason to think that counsel's conduct 'was far from exemplary,' a court still may not grant relief if '[t]he record does not reveal' that counsel took an approach that no competent lawyer would have chosen." *Dunn*, 594 U.S. at 739 (quoting *Titlow*, 571 U.S. at 23–24). The state court record reveals no such thing, nor is the "black money" scheme "an issue beyond the ken of a lay jury" such that an expert would be required. *See McMunn*, 869 F.3d at 267.

iv

Karngbaye's claim that counsel was ineffective for failing to timely appeal fails because "[a]ny prejudice he may have suffered based upon counsel's failure to file a timely direct appeal was remedied by the reinstatement of his appellate rights." *Clark v. Glunt*, No. 12-623, 2013 WL 6047493, at *9 (E.D. Pa. Nov. 15, 2013).

4

Karngbaye further claims that trial counsel was ineffective for failing to object to the Commonwealth presenting Eggu's testimony without using an interpreter, something that allegedly allowed the prosecution to get away with leading the witness. (Mem. In Supp. For Writ of Habeas Corpus, ECF No. 1-1, at 28). As an initial matter, trial counsel did object to the prosecution's leading questions. *See* (N.T.T. 90:23–24). In any event, *Martinez* cannot save this claim because only "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez*, 566 U.S. at 9.

20

*See also Norris v. Brooks*, 794 F.3d 401, 404–05 (3d Cir. 2015) ("[T]he [Supreme] Court stated that the exception applies only to attorney error in initial-review collateral proceedings, not appeals from those proceedings.").  Because this claim was litigated before the PCRA court, (ECF No. 10-1, at 196–209), the pertinent "initial-review collateral proceeding," the *Martinez* exception does not apply, and PCRA counsel's failure to pursue the claim on appeal cannot establish cause sufficient to avoid default of the claim.  *See Melacio v. Zaken*, No. 20-2068, 2023 WL 4138258, at *10 (E.D. Pa. June 22, 2023).

5

Next, Karngbaye contends that counsel was ineffective in failing to properly impeach and cross-examine prosecution witnesses, such as Eggu and Detectives Weiser, Owens and Drouillard.  "The right to a fair trial does not translate into the right to a perfect trial." *Travillion*, 759 F.3d at 291.  And again, *Strickland*'s presumption of correctness "operates with particular force when the conduct at issue relates to counsel's conduct of cross-examination." *McCray*, 165 F. App'x at 49.

Thorough review of the trial record shows counsel performed reasonably insofar as he questioned witnesses on the gun, cell phone tracking data and the existence of a third individual—issues relevant to the robbery charges.  (N.T.T 208:3–211:9, 293:16–22, 298:22–301:7).  Moreover, counsel cross-examined Eggu and Detective Drouillard about the discrepancies between Eggu's statements to the two police officers, attempting to cast doubt on Eggu's credibility.  (N.T.T. 151–185, 275:1–277:8).  Karngbaye ignores these facts, and merely speculates, *inter alia*, about the fate of his co-conspirator, that "[m]aybe the state court record contains information about what

amount Mr. Eggu received from the insurance company" and that perhaps Eggu searched his refrigerator hoping he would "find a windfall in the form of a substantial return on their 'investment.'"  (Objections to R&R, ECF No. 17, at 12–13).  Though Karngbaye thought counsel should have focused on other issues, he did not pursue weak arguments at the expense of significant and obvious ones.  *See Workman*, 915 F.3d at 942; *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) ("When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect.").  And again, without evidence to the contrary, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

6

Finally, Karngbaye contends that the cumulative effect of his trial counsel's errors constituted ineffective assistance.  "The cumulative effect doctrine allows a petitioner to present a standalone claim asserting the cumulative effect of errors at trial that so undermined the verdict as to constitute a denial of his constitutional right to due process." *Collins v. Secretary of Pennsylvania Dep't of Corrections*, 742 F.3d 528, 542 (3d Cir. 2014).  Habeas relief may be granted on cumulative error where: (1) the individual errors involved matters of constitutional law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors "so infected the entire trial that the resulting conviction violates due process." *Darden v. McNeel*, 978 F.2d 1453 (5th Cir. 1992), *cert. denied*, 508 U.S. 960 (1993) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  "Cumulative errors are not harmless if they had a substantial

and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish 'actual prejudice.'" *Collins*, 742 F.3d at 542 (quoting *Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir.2008)).  Like many of Karngbaye's ineffective assistance of counsel claims, this one was not presented to the state court during PCRA proceedings and is procedurally defaulted.  *Id.* at 543.  And as a whole, trial counsel was not deficient: he cross-examined the victim and prosecution witnesses, made objections when the prosecutor asked leading questions and displayed knowledge of technical aspects of fingerprint identification methods and cell phone tracking.

     An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.